## Case No. 6,895.

### HUNT v. POOKE.

#### [1 Abb. U. S. 556.] [1]

Circuit Court, D. Rhode Island. April Term, 1870.

##### PRACTICE—GRANTING NEW TRIAL.

1. A circuit court has power to set aside a verdict upon the ground that it is against the weight of evidence.

2. The power to set aside a verdict as against the weight of evidence should only be exercised where the court can clearly see that the jury have acted under some mistake or from some improper motive; where there has been some mistrial apparent to every impartial mind without labored examination; or where the jury have plainly departed from some rule of law, or made unwarranted deductions from the evidence.

[Cited in Fuller v. Fletcher, 6 Fed. 129.]

Motion for a new trial.

B. N. & S. S. Lapham, for the motion.

A. Payne and John F. Tobey, opposed.

KNOWLES, District Judge. The jury, in the case of Hunt, Tillinghast, and others against Pooke and Steere, returned a verdict against the defendants for the sum of two hundred and twenty-nine thousand four hundred and forty-two dollars and ninety cents; and a motion is now pressed by them that it be set aside, because, as alleged, against the evidence, or the weight of evidence.

Under federal laws, and the practice of federal courts, motions like this are addressed to the discretion of the presiding judge, or, in case of his decease or inability, to the discretion of his successor or associate. It is assumed that his notes of the testimony sufficiently represent the evidence upon which the verdict was based; and whenever from any cause these are not available, a report of the testimony, satisfactory to the court, must be prepared, as best it can, before the motion can be heard. In this case the jury trial took place in my presence, and the report of the evidence, as counsel presented it, is consistent in all essentials with both my notes and my recollections.

It is a noticeable fact, apparent on merely

a glance at text-books and the leading reports of the state and federal courts, that although this ground for a new trial is very frequently assigned, it is rarely insisted upon at a hearing of the motion; and also, that whenever it is insisted upon, whether as a single ground, or as one of a series, it is rarely, very rarely sustained by a court. Nor is this the only prominent fact which the authorities, so to style them, avouch. Another is, that almost without exception, whenever a court is urged to grant a new trial upon this ground, its reasonings (if it deign to reason) betray a consciousness that, after all is said that pertinently can be in support of the right of a court to overrule a jury's finding upon the evidence legally submitted to them, there yet remains a serious doubt as to its power in this regard. But as I find this point res adjudicata in this circuit, and no question upon it is raised at the bar, I abstain from inquiry or remark concerning it. Suffice it to say, that in the opinion of Justice Daniels, in Mitchell v. Harmony, 13 How. [54 U. S.] 138, will be found arguments and suggestions bearing upon this point, to which, in my view, a satisfactory answer is yet a desideratum. Mr. Calhoun was wont to maintain that the recognition of a right on the part of a state to nullify a law of the federal government, was practically an invaluable safeguard against oppressive legislation on the part of the federal government; and so may it be argued that a recognition of a right in the court to set aside a jury's verdict, because against the weight of evidence, is, to some extent, a preventive of hasty and inconsiderate findings in the jury room.

Assuming, as I am warranted in doing, that my right and power to set aside the verdict in this case is unquestionable, it is still but courteous and prudent to inquire by what rules and principles my predecessors in office in this circuit have been guided in like cases. That such rules and principles are binding as precedents, in the technical sense, cannot be contended; for when a question is addressed to the discretion of a judge, what another judge, in the exercise of his discretion, may have done, can be regarded but as data for argument, not as a ground of assertion and demand. What, then, has been the ruling of the eminent jurists who, as circuit judges, have heretofore administered justice in this district?

I. Justice Story, in Alsop v. Commercial Ins. Co. [Case No. 262], says: "The next exception is that the verdict is against evidence, or at least against the weight of evidence. . . . In considering questions of this nature, I confess myself among those judges who are very reluctant to intermeddle with the verdicts of juries in mere matters of fact. . . . There was a time when courts were disposed to go to an extravagant length on this subject, and to set

---

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

aside the verdict of a jury merely because, in the opinion of the court, the weight of evidence was on the other side. This was, indeed, substituting the court for the jury in trying the credibility of testimony and the weight of evidence. For one, I am not disposed to proceed far upon this dangerous ground; and in matters of fact I hold it to be my duty to abstain from interfering with the verdict of a jury, unless the verdict is clearly against the undoubted general current of the evidence, so that the court can clearly see that they have acted under some mistake, or from some improper motive, bias, or feeling. I adopt the language of Lord Ellenborough (see Moore & S. 192): 'The question before us is not whether the verdict given in this case is such as we should ourselves have given, but whether, having been given by a jury, to whom the whole case was fully left in point of fact, and to whom the law upon the subject was distinctly stated, it ought to be set aside, upon the grounds of the argument now suggested to us,—namely, that they have drawn an erroneous conclusion.' "

II. Justice Woodbury, in Fearing v. De Wolf [Case No. 4,711], says: "It has been adjudicated that though in the exercise of this discretion a verdict may be set aside even when there is evidence on both sides, yet, to set aside a verdict because against the supposed weight of the evidence, it must be clearly and palpably against it. One illustration given as to this is when the evidence is all one way, except trifling or impeached matter, and the verdict is the other way. So it may be set aside if the evidence was all on one side in its tendency, no less than origin; and in this and the last case was apparently sufficient. Or when it is so strong for one side that the court did not deem it necessary to charge the jury, and the verdict was for the other side; or when the judge stops the defendant from putting in evidence, because there is so little for the plaintiff, and the jury find the other way. Circumstances like these show at once that there has been a mistrial. But if the mistrial or misfinding is not thus decidedly and manifestly wrong, standing out in bold relief, and clear to almost every impartial mind, and without a labored examination and comparison, the court must refuse to interfere." And for this conclusion, Justice Woodbury proceeds to assign reasons, exhaustive of the subject.

III. Justice Curtis, in Wilkinson v. Greeley [Case No. 17,671], says: "I hold it to be my duty not to interfere with the verdict of a jury as being against the evidence, unless I can clearly see that the jury must have unconsciously fallen into some mistake, or been actuated by some improper motive, in rendering their verdict." And again, in Palmer v. Fiske [Id. 10,691], he says: "Now what I have to determine upon

this motion, is, not whether I should have found this verdict, but whether I can clearly see that the jury must have fallen into some important mistake in computing the damages, or must have departed from some rule of law, or have made deductions from the evidence, which are plainly not warranted by it."

Of the views of Justice Clifford, we have a very significant intimation in Wightman v. Providence [Case No. 17,630], in these words: "In the second place, it is insisted that the verdict is against the evidence introduced to the jury. Such motions (for a new trial) are frequently made and seldom sustained, and it is quite certain in the present case that the motion is without merit." And in Bray v. Hartshorn [Id. 1,820], the same learned justice says: "New trial is also asked upon the ground that the verdict of the jury is against the evidence, and the question is presented in some two or three forms. One or two observations upon this point will be sufficient. When evidence is given on both sides, and the verdict of the jury is satisfactory to the court, the parties must not expect an extended argument from the court in disposing of the motion for a new trial. Cases of real doubt, or when the court is dissatisfied with the verdict, of course are not included in this remark. In view of the explanations given and of the whole case, I am of opinion that there was no error of law at the trial, and no reason for disturbing the verdict of the jury. The motion for a new trial is accordingly overruled."

As I have already intimated, I cannot regard the opinions of even these distinguished jurists as controlling or limiting my judicial action. My own judgment is to dictate my decision upon the question submitted to me. Still, as I find in them a rule or rules of proceeding, to which, in my view, no tenable objection can be suggested, I shall, in disposing of this motion, keep within the lines of these opinions.

Are then the defendants entitled to a new trial, for the reason assigned,—having regard to the settled practice in this circuit, as shown by these extracts from the opinions of Justice Story and his successors? To the question, my answer can be but in the negative; nor does it seem to me necessary or expedient, in vindication of this finding, to recapitulate or to discuss in detail the evidence submitted or the points raised.

The jury, with the exception of two members only, were the same before whom but a few weeks previously had been tried a cause between, as it were, the same parties, in the trial of which much—in fact the greater part—of this evidence was submitted. That they fully understood the evidence must be presumed, for it was put before them not hurriedly, but deliberately, and was explained and commented upon, both in the opening and close by the defendant's coun-

sel without stint or check. Indeed, in this regard the case is without a parallel within my experience. Ordinarily it is deemed an objection to a jury, as a whole, that in a trial of some cause, already disposed of, they have heard the testimony which is necessarily to be submitted in the case called for trial; and had either party at the trial asked that another jury, strangers to the facts and parties, be impanneled, he might reasonably have anticipated that his motion would have prevailed. But so it happened, that the parties were content (each objecting to one individual only) to submit the cause to the same jury to whom the replevin case had been submitted; and, therefore, from neither can properly now be heard any imputation of bias or prepossession on the part of the jurors or any of them. That the jury were, therefore, more familiar with the facts in combination, and in detail, than is usual, and of course better qualified to deduce correct conclusions from them, as suggested or pressed by the counsel respectively, are self-evident propositions.

Furthermore, as will be recollected, the law of the case, as embodied in the charge of the court, was made known to the counsel and jury, while the defendant's counsel was closing, and accordingly the counsel's arguments were framed, and the facts classified, compared, and commented upon with especial reference to the law, as assented to by both parties. The charge of the court, substantially embodying only the rules of law thus assented to, certainly did not mislead or confuse the jury, as charges, unhappily, sometimes do; and was, so far as appeared, satisfactory to both parties. The jury patiently heard all the evidence, and the elaborate arguments of counsel, and seemingly listened with due respect and attention to the court's charge—and then rendered their verdict. The parties had been fully heard through able counsel of their own choosing. They elected to submit their differences to the award of twelve men, impanneled as a jury, and with that, for aught that has been shown, they are bound to be content. I can see no legal ground for overruling or setting it aside. To do this, under the circumstances of the case, distinguished as it is from causes in general in the particulars to which I have referred, would be, in my view, to adjudge the jury to have been most pitiably wanting in barely ordinary intelligence and sagacity.

In the argument of this motion, it has been urged with great force, as it was at the trial, that the entries upon the plaintiffs' books, and the accounts rendered by them, conclusively show a payment, or settlement of the plaintiffs' account against the defendant firm; and it is contended, seemingly with confidence, that inasmuch as the jury failed to adopt this conclusion, their verdict should be held to have been against the evidence. That this was very significant as well as

very pertinent evidence, abstractly considered, cannot be questioned; and that it should be relied on, by counsel, as of great weight, is no matter of wonder. But it is to be kept in mind that neither did the defendant's counsel in his argument to the jury contend, nor did the court charge, that this evidence was conclusive. On the contrary, the jury were instructed by the court, adopting the views of the antagonizing counsel, as expressed in their arguments, that the evidence in question was but portions of the facts entitled to consideration, and that it was not in itself conclusive evidence of an agreement, or even of an intent, on the plaintiffs' part, to release or exonerate their debtor, Pooke. In what degree that evidence tended to show such an intent or agreement, the jury were told they were to determine upon all the facts in proof. Whether or not the plaintiffs were for any reason estopped from denying that Pooke had been released by them, is a question which at the trial was not propounded to the court. Then it would not have been impertinent; and if then propounded, would, of course, have been answered. In the trial of this motion, it is obviously an irrelevant inquiry.

Of my views of duty and policy, as regards instructions to juries, the counsel and parties in this case, not to say the bar and the public generally, are already apprised. My views as regards the setting aside of verdicts, I deem it not amiss, in this connection, to state in as few words as may be.

The right and power of a federal judge in the exercise of his discretion to set aside a jury's verdict, and to grant a new trial upon terms such as he sees fit to impose, is, in view of the best authorities, not to be questioned. Whether a trial by jury in our day, the court claiming a right in its discretion to instruct the jury upon the weight as well as the relevancy of evidence, and a power in its discretion to set aside a verdict for any cause, is, in fact, the trial by jury, of the olden time of Coke and his cotemporaries,— and in eulogiums upon which so much of breath and printers' ink has been wasted by the orators and writers of Anglo-Saxondom of yesterday and of a century preceding,— is a question which I willingly refrain from raising in this connection. The power to set aside a verdict is claimed and exercised, and its value and necessity, as an agency in the prevention and correction of wrong, and the furtherance of justice and right, I fully appreciate. So long as to a chance selected jury we submit our differences and disputes, touching all our highest interests,—life, property, reputation,—it is the dictate of common sense that somewhere shall reside a power to correct the errors of ignorance, recklessness, and incapacity, and defeat the machinations of malice and fraud. For what is a jury? Nothing less nor more than (in the words of another) "a body of men, drawn by hazard from the community at

large; taken forcibly from their private affairs, and without the practiced powers of analysis, of memory, and of judgment, which alone could enable them to detect fallacies, to unravel the tangled web of deceit, and resist the persuasions of eloquence—especially when compelled to a hurried unanimity, in cases where the wisest are compelled to doubt."

Such the jury, the necessity of a right and power to supervise, and, if need be, modify their findings, is apparent. But not less apparent is. it, that, if a jury trial is to be anything better or more than a glittering sham, this power to set aside verdicts as against the evidence must be exercised only on rare occasions. Evidently such was the view of the eminent jurists whose opinions I have quoted, as establishing the rule of law, or rather the practice, within this circuit, my concurrence in which I have already signified.

The right of the court to instruct a jury in matters of law, is believed to be everywhere conceded; and we know that no court entitled to respect ever hesitates to set aside a verdict when it is shown that its instructions have been ignored or contemned. The right of the jury to determine questions of fact is equally well established; and it is undeniably as obligatory upon a court to respect a right of the jury, as to demand from the jury respect for its rights. The boundary line between the provinces of the court and jury, originally, centuries ago, clearly enough defined and seldom overleaped, is now not easily found. In the day of Sir Edward Coke, the maxim of the law was: "And as with respect to the questions of law, the jury must not respond, but only the judges; so (or in like manner or under like restriction) the judges must not respond to questions of fact, but only the jury,"—a maxim which evidently teaches that the jury and court, within their respective spheres of duty, are alike independent each of the other, and with which the practices of to-day are manifestly inconsistent. But it is of the law of to-day alone, that the occasion requires me to treat. Under this law, a federal judge, exercising a discretion without limit, may, in his charges, mold a jury's determination (in the words of Blackstone), "by boldly asserting that to be proved which is not so, or by more artfully suppressing some circumstances, stretching and warping others, and distinguishing away the remainder;" and may also, if he see fit, set aside the verdicts which successive juries may render, until one satisfactory to him shall be returned. "Ita lex scripta est." For a modification of it, if desired, the power of the federal legislature must be invoked. In this district, so far as appears, this discretion has invariably been wisely, and, therefore, blamelessly exercised. It is but reasonable and magnanimous to hope and trust that neither through ignorance, indolence, wantonness, or perverseness, will that discretion in the future be abused.

It was, in my view, no abuse of that discretion, when the Pennsylvania jurist, on the return of a verdict by a jury, on the instant exclaimed: "Mr. Clerk! Enter an order that that verdict be set aside. I wish it to be understood that in my court it requires a verdict from thirteen to rob a banking corporation." Nor was it, in my view, any abuse of that discretion on the part of Justice Curtis, when, at Newport, a motion for a new trial on the ground that the verdict was against the evidence, being handed him by a very able and very pertinacious member of the Rhode Island bar, he, without a moment's hesitation, said: "You can file your motion, Mr. C., but I overrule it now and at once—for I heard that case tried, and am satisfied with the verdict." The motion for a new trial is overruled.

Judgment on the verdict for two hundred thirty-one thousand five hundred and eighty-four dollars and thirty-six cents for plaintiffs.